[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTIONS TO SET ASIDE
These two cases were tried together.
In the case of Bovienzo, et al v. Randall, the jury rendered a verdict in favor of the plaintiff in the amount of $27,500.00. In the case of Pinto v. Randall, the jury, by direction of the court, rendered a verdict for the plaintiff, Pinto, on the defendant Randall's counterclaim. The defendant Randall, has filed identical motions to set these verdicts aside, as follows:
 1. It is contrary to law 2. It is against the evidence 3. The Court erred in its instructions to the jury 4. The Court erred in its rulings on the evidence.
The specific grounds on which counsel relies are not stated in the motions as required by P.B. 320, nor have the grounds been briefed, but the Court will treat these motions on the basis of the oral arguments presented during the hearing on the motions.
The background information on these two cases can be simply stated. On February 21, 1986, a contract of sale was executed whereby, Theresa Randall, the defendant in both cases, agreed to sell her condominium in Bridgeport to the Bovienzo for $84,500.00. At the time, Richard Pinto, an attorney, was representing both seller and buyer. A closing date was set for February 28, 1986. On February 25, 1986, Pinto was fired and replaced by another attorney, and a new closing date of March 4, 1986 was set. On March 4, the defendant, Randall, refused to close the deal.
Immediately thereafter, at the end of March 1986, the Bovienzos instituted suit against Randall for breach of the sales contract. On May 1, 1986, Pinto commenced his action for legal fees in the amount of $350.00 against Randal in the Small Claims Court.
In the Pinto action, Randall moved to transfer to the regular docket of the Superior Court, and the case, having been transferred, filed a counterclaim against Pinto, alleging that as a result of his negligence in representins both parties to the real estate contract, Randall was being sued for damages by Bovienzo, and, in addition, she suffered CT Page 3248 physical, nervous and emotional upset. Subsequently, on February 10, 1987, Richard Pinto died, and his executrix, Madeline J. Pinto, was substituted. At trial time, Pinto's claim for legal fees was withdrawn and the Pinto case proceeded solely on Randall's counterclaim. At the conclusion of the cases, the Court directed a verdict in favor of Pinto.
At the hearing on the Motions to Set Aside the verdicts, Randall's counsel argued, first, that the court in the Pinto case, eliminated Randall's counterclaim. The Court did not eliminate the counterclaim. It simply directed a verdict on the counterclaim in favor of Pinto. Counsel then argued that it was an error to direct such verdict. It cited no authority for this argument. The Court simply pointed out that based on the ruling in cases such as ORLO v. Connecticut Co.,128 Conn. 231, 239, any claim that Pinto's negligence resulted in physical, nervous and emotional upset would require a showing that Randall was within the range of ordinary physical danger from that negligence. There was no evidence that such was the case. Nor was there evidence of probative value to suggest that, if in fact, Pinto was negligent in representing both parties to the contract of sale, this resulted in Randall being sued by Bovienzo. In actuality, Pinto had been fired, and Randall breached her contract while being represented by another attorney.
Randall's counsel's final argument at the hearing involved the claim that it was error for the Court to exclude testimony by a Dr. Wasserman which attempted to attribute Randall's emotional breakdown at a deposition at the end of May 1986, and, subsequent heart attack, to Pinto's conduct in representing both parties to the sales contract of February 21, 1986. Again, the depositions took place some three months after Pinto had been discharged and such evidence would have been conjectural at best.
At the same time, Randall's counsel claimed error in the exclusion of a question asked of Professor Trowbridge, professor of legal ethics at Bridgeport University. Professor Trowbridge had testified that in his opinion, Pinto's representation of both Randall and Bovienzo was a breach of legal ethics and negligence. He was then asked if such negligence was the cause of Randall's being upset and being sued for damages. This question was properly excluded since the question of causation would have been a question of fact for the jury to decide, apart from the fact that there was no evidence that Professor Trowbridge was qualified to supply an answer.
With respect to the case of Bovienzo v. Randall, CT Page 3249 defendant's counsel argued that the Court erroneously eliminated the defendant's counterclaim from consideration by the jury. This referred to a so-called counterclaim which Randall had filed along with the revised special defenses dated December 18, 1986, in which she had pleaded (1) non compos mentis (2) coercion and duress, when she executed the sales contract of February 21, 1986. Labelling a pleading "counterclaim" does not necessarily make it such. The alleged counterclaim simply repeated the allegations of the second special defense, i.e. duress. It did not contain allegations of claimed damages, nor did it include allegations that the plaintiffs' conduct caused such damage to the defendant. The Court, therefore, excluded any alleged counterclaim from consideration by the jury.
The final claim by Randall's counsel was that the Bovienzos' verdict was contrary to the evidence in that the jury ignored psychiatric testimony by Dr. Alexander relating to Randall's mental condition as it bore on the defense of "non compos mentis". There was ample testimony from a number of other witnesses which disputed Dr. Alexander's opinion and the jury had a right to decide this issue as a disputed question of fact. Obviously, the jury rejected Dr. Alexander's opinion, which it had a right to do.
There is one further issue to be decided. On February 26, 1988, the plaintiff filed an offer of judgment in the amount of $22,500.00. Since the verdict of $27,500.00 was greater than the amount of the offer of judgment, the plaintiff is entitled to 12% interest from the date the offer of judgment was filed. The Court computes this amount of interest to be $8,358.72. C.G.S. 52-192a(b).
The Motions to Set Aside the Verdicts are denied.
BELINKIE, State Trial Referee